IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JONES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. 10-00495-KD-M |
| JOHNNY MILLER and SAM COCHRAN, | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 60-62), Plaintiff's opposition (Docs. 70, 71) and Defendants' reply (Doc. 72).

**I.    Background**[1]

*Pro se* Plaintiff Timothy Jones ("Jones") initiated this action under 42 U.S.C. § 1983 alleging two (2) claims: 1) against Defendant Mobile County Deputy Sheriff Johnny Miller ("Deputy Miller")[2] in his official and individual capacity, for violation of his Fourth Amendment rights[3] due to excessive force; and 2) against Defendant Mobile County Sheriff Sam Cochran ("Cochran") as having "promulgated and established policies that caused Deputy Miller to

---

[1] On summary judgment, Jones objects to certain information that Defendants included in their "Proposed Findings of Fact" (and brief) regarding his "criminal background concerning paroles, failed drug tests, and criminal history[,]" and requests that the Court strike same from the record as irrelevant and inadmissible.  (Doc. 70). It is **ORDERED** that Jones' objection is **MOOT** because such factual information was not considered on summary judgment.

[2] Deputy Miller has served as a Deputy Sheriff in the Mobile County Sheriff's Office since February 19, 2002; he was hired prior to Cochran becoming Sheriff.  (Doc. 62-1 at 2 at ¶2 (Aff. Miller); Doc. 62-2 at 2 at ¶2 (Aff. Cochran)).

[3] While Jones initially alleged a Fourteenth Amendment rights violation in his Complaint, he appears to have abandoned such claim on summary judgment (he does not raise/address same).

employ excessive force after having personal knowledge of prior incidents of excessive force used by Miller." (Docs. 4, 10).

Jones' complaint stems from events surrounding an April 11, 2009 police chase – which Deputy Miller initiated as a traffic stop for speeding -- following Jones' robbery[4] of a Family Dollar Store in Mobile, Alabama. As alleged by Jones:

> I was chased and pulled over for speeding. Deputy Miller then approached my vehicle and shot 21 times, striking twice in the chest, once in the leg and once in the arm. My vehicle was wrecked, my door was open and my hands were raised in the air at the time of the shooting. Deputy Miller chased me about 30 minutes before the wreck and shooting, an[d] no other officers were present during the chase or shooting…I was not armed and no weapon was in my vehicle.

(Docs. 4 at 4, 10). On summary judgment, Jones explains the incident in greater detail:

> On April 11, 2009, Jones did commit a robbery at the Family Dollar Story located on Moffett Road in the city limits of Mobile, Alabama, by telling the cashier to give him the money. Jones did not have a gun or any other weapon, as the story video clearly indicates, and Jones did not imply that he was armed with a gun or any other weapon. Jones left the store in his truck and shortly thereafter he passed Deputy Miller, who was operating a stationary radar on Highway 158. Deputy Miller's radar indicated that the truck was traveling over the posted speed limit and Deputy Miller initiated his blue lights and gave chase. Sometime during the sixteen mile chase, dispatch informed Deputy Miller that the truck matched the description from a robbery at the Family Dollar Story. When dispatch was asked over the radio if the robbery suspect was armed, the dispatch stated that no weapon was indicated, "unknown if any were involved."
>
> Jones lost control of his truck and crashed the front of the truck into a stand of several trees….For the first time, the defendant has stated in the motion for summary judgment that when he (Miller) arrived on the crash scene, Jones was out of the truck and Miller ordered him to stop and surrender, but Jones then ran back towards his truck. Deputy Miller now alleges that at this time Jones held his hands as if he were holding a weapon and aimed it at Miller. Because it is not true it does not make sense, as to why Deputy Miller did not feel threatened enough at this point to shoot Jones, who was supposedly out of the truck and aiming a weapon directly at Deputy Miller.

---

4 Jones asserts that he "did not have a gun or any other weapon" when he robbed the Family Dollar Store. (Doc. 70 at 2).

Deputy Miller further alleges, for the first time, that when Jones got back into his truck he tried to maneuver the truck onto the street, causing Deputy Miller to fire his weapon into the front of the truck to disable it. Plaintiff's Exhibit D are crime scene photographs that clearly contradicts this allegation now being made by the defendant. Jones crashed the front of his truck into a stand of trees, and as depicted in the photographs, it was not possible for Jones to maneuver his truck to the street, as falsely alleged by Miller in his motion for summary judgment. Deputy Miller successfully disabled the engine of the truck. At this point he instructed Jones to, "You better get outa the fu%##ing..."… Jones complied, and with his hands raised in the air, palms facing out, when his feet touched the ground Deputy Miller commenced to firing his weapon at Jones. The first bullet entered Jones' raised inner forearm, disabling his arm and hand for life….The impact of the bullet pushed Jones backwards into the truck while Deputy Miller continued his barrage of gun fire. By the time Deputy Miller ran out of bullets in his second clip, Jones had been shot five times and lay bleeding to death in the seat of the truck. Jones has a constitutional right to be free from excessive force during a seizure.

(Doc. 70 at 2-3).  See also Jones' Affidavit (Doc. 70 at 13-14).

## II.    Summary Judgment[5]

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R.

CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

5 While Plaintiff alleges on summary judgment that he was denied adequate medical treatment and care while at Mobile County Metro Jail, this is neither alleged nor asserted as a claim in the Complaint (as amended).  (Docs. 4, 10).  As such, this claim is not at issue in this case.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).  Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11ᵗʰ Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter…the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11ᵗʰ Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

On summary judgment, Deputy Miller asserts a *significantly* different version of the events of April 11, 2009, supported only by his statements and personal description of what transpired (as no other officers were present) in his Affidavit.  Crucial to this factual disparity is precisely what transpired between the time Jones crashed his truck and when the last shot was

fired by Deputy Miller.[6]  On summary judgment, the Court must take the facts in the light most

favorable to Jones. Thus, Deputy Miller's dramatically different version underscores the

existence of a genuine issue of material fact, as set forth below.  Indeed, with specific respect to

the resolution of a summary judgment motion based on qualified immunity – as is the case here -

- the Eleventh Circuit has declared:

> …we approach the facts from the plaintiff's perspective because "[t]he issues
> appealed here concern not which facts the parties might be able to prove, but,
> rather, whether or not certain given facts showed a violation of clearly established
> law." Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998). As this Court has
> repeatedly stressed, the "facts, as accepted at the summary judgment stage of the
> proceedings, may not be the actual facts of the case." Priester v. City of Riviera
> Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Nevertheless, for summary
> judgment purposes, our analysis must begin with a description of the facts in the
> light most favorable to the plaintiff….

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

## A.     Qualified Immunity

Qualified immunity shields public officials acting within the scope of their discretionary

authority from liability so long as their acts do not violate clearly established statutory or

constitutional rights.  See, e.g., Pearson v. Callahan, 555 U.S. 223 (2009); Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982); Autery v. Davis, 355 Fed. Appx. 253, 256 (11th Cir. 2009); Lewis v.

City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). "The purpose of this

immunity is to allow government officials to carry out their discretionary duties without the fear

of personal liability or harassing litigation...protecting from suit all but the plainly incompetent

or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th

Cir. 2002) (internal quotation marks omitted). Once discretionary authority is established, the

---

6 Deputy Miller contends that Jones tried to escape, held his hands like he had a weapon aimed
at the Deputy, and that Jones would not respond to verbal commands, etc.

burden shifts to the plaintiff to show that qualified immunity should not apply.  See, e.g., Lewis, 561 F.3d at 1291.  To assess entitlement to qualified immunity, a court must determine: 1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights; and 2) whether the right at issue was clearly established at the time of the constitutional violation.  Harlow, 457 U.S. at 818.  It is within a court's discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 235-236 (referencing the Saucier v. Katz, 533 U.S. 194 (2001) analysis).

Jones alleges that Deputy Miller violated the Constitution's prohibition on excessive police force, violating his Fourth Amendment right to be free from the Government's use of excessive force during a seizure.  Courts must account "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  Graham v. Connor, 490 U.S. 386, 396-397 (1989).  While suspects have a right to be free from force that is excessive, they are not protected against a use of force that is "necessary in the situation at hand."  Lee, 284 F.3d at 1197. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396.  To determine if the use of force exceeded that which is necessary, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotation marks omitted)).

Any use of force must be reasonable. Graham, 490 at 395. "[C]laims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" Id. See also e.g., Brosseau v. Haugen, 543 U.S. 194, 197 (2004). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" Graham, 490 at 397. The reasonableness of a particular use of force then, is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. See also e.g., Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009). The reasonableness test is not mechanically applied, but instead "requires careful attention to the facts and circumstances of each particular case" by consideration of the "Graham factors:" 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. See, e.g., Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011).

### 1. Deputy Sheriff Miller

At the outset, Deputy Miller alleges – and Jones does not appear to dispute -- that he was acting in the scope of his discretionary duties when he attempted to pull him over for a traffic stop. As such, Jones must show that Deputy Miller's conduct violated clearly established law because: 1) the facts alleged show that the official's conduct violated a constitutional right; and 2) the right was clearly established at the time of the official's action. See *supra*.

Taking the facts in the light most favorable to the plaintiff, Jones' version of events would establish a constitutional violation -- namely, that the shooting of Jones was an objectively

unreasonable use of deadly force violating his Fourth Amendment rights. As alleged, on April 11, 2009 Jones robbed (unarmed) a Family Dollar Store of approximately $483.00. After Jones left the store, Deputy Miller clocked him for driving over the speed limit (90/mph). Deputy Miller attempted to pull Jones over for speeding which resulted in an extended police chase for about 16 miles. As he was pursuing Jones, Deputy Miller was informed that Jones' vehicle matched the description from the Family Dollar Store robbery and was told that it was "unknown" if any weapon had been involved. Subsequently, Jones lost control of his vehicle and crashed into a stand of trees. The events which occurred after Jones crashed are in dispute. According to Jones, Deputy Miller approached his vehicle and instructed him "You better get outa the fu%##ing[,]" and even though he complied and raised his hands in the air, palms facing out, when his feet touched the ground upon exiting his vehicle, Deputy Miller immediately used deadly force and shot at him multiple times. In sum, Jones has presented evidence that Deputy Miller used deadly force and repeatedly shot at an unarmed man. See, e.g., Hadley, 526 F.3d at 1330 (providing that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force[]").

Deputy Miller's summary judgment argument focuses on Graham's "reasonableness" standard. See supra. Specifically, Deputy Miller contends that he is "entitled to qualified immunity if he reasonably could have believed that probably cause existed, in light of the information he possessed, to shoot Jones even if that belief was mistaken." (Doc. 61 at 10). From this, Deputy Miller asserts that he is entitled to such immunity as he had reasonable cause to believe that Jones had just committed a robbery, was armed, and that he was attempting to escape and when confronted, pointed a weapon towards him such that Deputy Miller had a reasonable objective belief that his life was being threatened to warrant the use of deadly force.

(Id. at 10-11).  Problematic to Deputy Miller's argument, however, is that the vast majority of the summary judgment evidence submitted to the Court is highly dependent upon a credibility determination -- believing either Jones' or Deputy Miller's version of events.  Specifically, there is an issue of fact as to whether it appeared Jones was pointing a gun (objectively reasonable reaction to shoot in response) or had his hands in the air (objectively unreasonable to shoot). Thus, the Court cannot determine as a matter of law that Deputy Miller is entitled to summary judgment on Deputy Miller's claim of qualified immunity.

### 2.      Sheriff Cochran

Jones alleges that Sheriff Cochran is liable for Deputy Miller's actions because he promulgated an inadequate use of force policy and failed to adequately train/supervise Deputy Miller even though he had personal knowledge of prior incidents of excessive force by Deputy Miller.  As alleged, Jones endeavors to assert a Section 1983 claim against Sheriff Cochran based on vicarious liability or *respondeat superior.*  Such a claim is not supported under the law given the facts of this case.  See, e.g., Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).  The standard by which a supervisor is held liable in his or her individual capacity for the actions of a subordinate is "extremely rigorous."  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998)).  Supervisory liability attaches only when the supervisor personally participates in the alleged constitutional violation, or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation.  See, e.g., Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010); Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  Jones has not alleged that Sheriff Cochran

personally participated in the alleged constitutional violation, and there is no evidence of such participation.  Rather, Jones contends that Sheriff Cochran promulgated an inadequate use of force policy and failed to adequately train/supervise Deputy Miller.

A plaintiff can establish the necessary causal connection first, by showing that "a history of widespread abuse put[ ] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671.  A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at 1235.  Further, a plaintiff can establish a causal connection by showing that a supervisor's "custom or policy... resulted in deliberate indifference to constitutional rights[.]" Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).  As such, to prevail on his claim, Jones must establish a causal connection between Sheriff Cochran's conduct and the alleged constitutional violation through: 1) a history of widespread abuse, which puts a reasonable supervisor on notice of the need to correct the alleged deprivation and he fails to do so; 2) a supervisor's custom or policy resulted in deliberate indifference to constitutional rights; or 3) facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  See, e.g., Harper v. Lawrence Cty., Ala., 592 F.3d 1227, 1237 (11th Cir. 2010).

The Mobile County Sheriff's Office Use of Force Policy (issued May 15, 2002 with an effective date of June 1, 2002) in effect as of April 11, 2009, "establishes guidelines concerning

the use of force, control measures and their limitations, and clearly describes prohibited activity."

(Doc. 62-3 at 2). The Policy is as follows: "[d]eputies shall use only the force reasonably

necessary to effect lawful objectives. When applying deadly force, the objective must be to *stop*

the suspect. The improper use of force, in any degree, in any situation, regardless of the

provocation or actions of the offender may result in administrative and/or criminal prosecution."

(Id. (emphasis in original)). The Policy adds that "[u]se of force shall be escalating in nature…A

de-escalation in the level of force will be required in accordance with any de-escalation of force

used against you." (Id.) The Policy states further, that "[f]acts unknown to a Deputy, no matter

how compelling, cannot later be considered in determining whether the use of deadly force was

justified." (Id. at 5).

　　Since Sheriff Cochran became Sheriff in 2006, he has been aware of only one (1) incident

before April 2009 in which Deputy Miller was accused of using excessive force (use of a taser).

(Doc. 62-2 at 2 at ¶¶2-3 (Aff. Cochran)). According to Sheriff Cochran, the incident was

investigated by his office and Deputy Miller was determined to have used an appropriate amount

of force and complied with all Mobile County Sheriff's Office rules and procedures regarding

use of force.[7] (Id. at ¶3 (Aff. Cochran)). The incident involving Jones was investigated by the

Internal Affairs Department of the Mobile County Sheriff's Office and the investigation

concluded that Deputy Miller did not violate the Office's policy regarding use of force. (Id. at 3

at ¶7 (Aff. Cochran)). Jones has not submitted evidence which establishes that anything about

this taser incident would have placed Sheriff Cochran on notice of any danger Deputy Miller

---

7 According to Cochran, this accusation also formed the basis of a federal lawsuit against Deputy
Miller and another deputy, and the jury found in favor of defendants. (Id.)

may pose, or that there was a possibility that Deputy Miller would violate the policies of the Mobile County Sheriff's Office.

Additionally, Jones has not submitted evidence of a history of widespread abuse in the Mobile County Sheriff's Office which would have placed Sheriff Cochran on notice that additional training or supervision was necessary regarding the use of force. The only other evidence Jones submits, showing Sheriff Cochran's awareness as to Deputy Miller, is a January 12, 2007 Notice of Pre-Disciplinary Hearing to Deputy Miller for his failure to attend firearm training. (Doc. 71 at 27-28). While Jones submitted evidence of a November 17, 2003 Internal affairs Report regarding Deputy Miller's excessive use of force (by striking a handcuffed individual three times), there is only evidence that this was reported to then Sheriff Jack S. Tillman, not to Sheriff Cochran. (Doc. 71 at 26). Likewise, Jones' submission of August 4, 2008 and March 5, 2009 Counseling Statements from a lieutenant to Deputy Miller for first, a Traffic Complaint (as to how he drove his police vehicle) and second, as to a failure to appear in court, does not provide evidence of any notice of same to Sheriff Cochran much less for "use of force" concerns. (Doc. 71 at 29-30). Further, in response to summary judgment, Jones only dedicates one (1) sentence to this argument: "Defendant Cochran had a duty to 'act' upon the violations committed by Deputy Miller and failed to do so." (Doc. 70 at 10).

In sum, the record reveals that Jones' allegations against Sheriff Cochran are conclusory as well as rooted in speculation and conjecture. Jones has thus failed to support his allegations with evidence of record and thus, Count Two of his Complaint cannot survive summary judgment. Accordingly, it is **ORDERED** that Defendants' motion for summary judgment as to Defendant Sheriff Cochran (Count Two) is **GRANTED.**

**III.    Conclusion**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (Docs. 60-62) is **DENIED** as to Jones' claim against Defendant Deputy Sheriff Johnny Miller (Count One) and **GRANTED** as to Jones' claim against Defendant Sheriff Sam Cochran (Count Two).

**DONE** and **ORDERED** this the **1st** day of **February 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**